UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDDIE JEFFERSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 1:19-cv-03466-JRS-MJD |
| WARDEN, | ) ) ) |
| Respondent. | ) ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Freddie Jefferson's petition for a writ of habeas corpus challenges his conviction in prison disciplinary case IYC 18-10-0069. For the reasons explained in this Order, Mr. Jefferson's petition must be **granted**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

IYC 18-10-0069 began with the following conduct report, written by Caseworker J. Jones on October 9, 2018:

> On 10/9/2018 at approximately 10:30, I Mr. Jones opened the door to my office and found a note that stated "Around 9:30am the black guy in Cube 4 Single Bunk got up and broke the T.V. we watch movies on." The note is dated 10/6/2018. While viewing video footage of Q-Unit on 10/6/2018 at approximately 10:03am, Offender Jefferson, Freddy #850435 is seen walking passed the television and then he uses his right hand to shove the television stand causing the television to fall and break. As a result of the television falling, there is now a solid black line that goes from the top of the screen to the bottom when powered on. The television was in proper working condition when being issued from the recreation department. Mr. Platt submitted a work order on the cost to replace the television (See attachment). Offender Jefferson is receiving a B215 Damaging State Property for his actions.

Dkt. 8-1.

On October 11, 2018, Mr. Jefferson received a screening report notifying him that he was charged with damaging the television. Dkt. 8-4. Mr. Jefferson requested to call two inmates as witnesses to testify that the television was already damaged as described in the conduct report before it fell on October 6. *Id.* He also requested security video of the area to show that he did not damage the television. *Id.*

IYC 18-10-0069 proceeded to a hearing on October 15, 2020. Dkt. 8-6. According to the hearing officer's report, Mr. Jefferson stated in his defense that he "did spin the TV around" but did not cause the damage described in the conduct report. *Id.* However, the hearing officer found Mr. Jefferson guilty based on the other evidence in the record—the conduct report, the security video, and the anonymous note to Mr. Jones. *Id.* Mr. Jefferson's sanctions included a loss of earned credit time that was initially suspended but later enforced. *Id.*; dkt. 8-19.

The inmates Mr. Jefferson requested to call as witnesses were not permitted to testify at the hearing. Both wrote statements that are in the record before this Court. Dkts. 8-8, 8-9. It is not clear, however, that the hearing officer reviewed the inmates' statements, as the hearing officer's

report does not acknowledge them. *See* dkt. 8-6. One inmate stated that the TV was damaged "for at least one year" before Mr. Jefferson knocked it over. Dkt. 8-8. He added that he "watched several movies with that line that goes straight down the middle." *Id.* The other inmate stated:

> I was the rec worker who brought the t.v. down there. The line was already there I was the first person to plug it up in East dorm.

Dkt. 8-9.

Mr. Jefferson's administrative appeals were denied. *See* dkts. 8-10, 8-12, 8-13, 8-14.

### III. Analysis

Mr. Jefferson asserts numerous grounds for relief in his petition. In this Order, the Court addresses only one. Mr. Jefferson was denied due process—and his petition must be granted—because he was denied the opportunity to present witness testimony at his disciplinary hearing.

**A.     The Right to Present Witness Testimony**

Due process entitles prisoners to a limited opportunity to present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563–67. That includes "a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566).

The right to call witnesses extends only to "material exculpatory evidence." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). The right is further limited in that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

When an inmate requests to call a witness at a disciplinary hearing, he is presumptively entitled to present the witness's live testimony as opposed to a written statement. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *Doan v. Buss*, 82 F. App'x 168, 170–71 (7th Cir. 2003) (rejecting the contention that "under *Wolff* oral testimony is not required as long as written statements are obtained"); *Ashby v. Davis*, 82 F. App'x 467, 471 (7th Cir. 2003) (holding that "[t]he submission of a written [witness] statement is not by itself a valid reason for not appearing," and explaining that "[l]ive testimony is the presumption absent a valid reason for proceeding differently").

The screening report unmistakably documents that Mr. Jefferson "wishe[ed] to call" two witnesses and that their "expected testimony" would address the condition of the television before Mr. Jefferson knocked it over. Dkt. 8-4. They did not testify at the disciplinary hearing. No evidence documents any reason why they were not permitted to testify—much less that their appearance would have undermined institutional safety or correctional goals. *See Piggie*, 344 F.3d at 678. No evidence indicates that Mr. Jefferson consented to use written statements in lieu of their live testimony. And, even if he did, the record does not indicate that their written statements were presented to the hearing officer. *See* dkt. 8-6 (omitting reference to inmates' statements).

The respondent argues that Mr. Jefferson failed to exhaust his denial-of-evidence argument through the administrative appeals process and that any testimony he was denied would not have been exculpatory. For the reasons set out below, though, neither argument is availing.

B.     **Exhaustion of Administrative Remedies**

A district court may not grant a state prisoner's petition for a writ of habeas corpus "unless it appears that" the petitioner "has exhausted the remedies available in" the state's courts. 28 U.S.C. § 2254(b)(1). When the petitioner "has not exhausted a claim and complete exhaustion is no longer available, the claim is procedurally defaulted," and the district court may not grant habeas relief based on it. *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019).[1]

"To avoid procedural default, an Indiana prisoner challenging a disciplinary proceeding must fully and fairly present his federal claims to the facility head and to the Final Reviewing Authority." *Jackson v. Wrigley*, 256 F. App'x 812, 814 (7th Cir. 2007) (citing *Moffat v. Broyles*, 288 F.3d 978, 981–982 (7th Cir. 2002) (holding that, because Indiana law does not provide for judicial review of prison disciplinary proceedings, § 2254(b)(1)'s exhaustion requirement demands that the prisoner present his claims at both levels of the administrative appeals process)).

The respondent argues—without any elaboration—that Mr. Jefferson "failed to exhaust his administrative remedies on this claim." Dkt. 8 at 10. But the record includes a disciplinary hearing appeal in which Mr. Jefferson wrote that "the two rec workers that's always in contact with this T.V. will state this T.V. is in good working condition, that it has had a black line down the middle in the past, violation of my due process . . . ." Dkt. 8-12 at 1. The respondent has not acknowledged this statement—much less explained how it failed to give the prison's administrators a fair opportunity to address Mr. Jefferson's objections to the denial of his requested witnesses'

---

[1] *See also Wilson-El v. Finnan*, 263 F. App'x 503, 506 (7th Cir. 2008) ("A petitioner is generally required to exhaust all of his available administrative remedies before seeking a writ of habeas corpus in federal court. If the petitioner fails to do so and the opportunity to raise that claim in state administrative proceedings has lapsed, the petitioner has procedurally defaulted his claim, and a federal court is precluded from reviewing the merits of his habeas petition.") (internal citations omitted); *Moffat v. Broyles*, 288 F.3d 978, 982 (7th Cir. 2002) ("That procedural default means . . . that state remedies were not exhausted, and precludes consideration of this theory under § 2254 . . . .").

testimony. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) ("Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims.").

Lacking any contrary explanation from the respondent, the Court finds that Mr. Jefferson properly exhausted his arguments regarding denial of witness testimony. *See, e.g.*, *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotations omitted)); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 511 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make Connor's case for him."); *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material.").

**C.     Exculpatory Evidence**

The respondent also argues that the denial of Mr. Jefferson's request to present witness testimony was harmless because the inmate's testimony was "not exculpatory as to the charged offense." Dkt. 8 at 10. The respondent bases this argument on the fact that security video shows Mr. Jefferson "knocking the television down onto a half wall and then replacing it flat on the cart." *Id.* As the respondent sees it, "[E]ven if there was a line on the screen before the incident, there is still some evidence that Jefferson damaged the television and it needed to be replaced." *Id.*

This argument cannot be reconciled with the disciplinary offense of which Mr. Jefferson was convicted. Code 215 punishes "[u]nauthorized possession, destruction, alteration, damage to, or theft of property." Dkt. 8-18 at § 215. Mr. Jefferson was not charged with knocking the television down; he was charged with damaging it. Both inmates stated that Mr. Jefferson could

6

not have damaged the television because the damage described in the conduct report was already there. *See* dkts. 8-8, 8-9. Their testimony directly undermined the conclusion that Mr. Jefferson violated Code 215. *See Jones*, 637 F.3d at 847.

The prison staff prevented Mr. Jefferson from presenting material, exculpatory evidence and did so without justification. As such, he was convicted without due process, and he is entitled to habeas relief.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Because Mr. Jefferson was denied due process in ISR IYC 18-10-0069, his petition for a writ of habeas corpus is **granted**. Mr. Jefferson's disciplinary conviction must be **vacated** and his sanctions **rescinded**. His earned credit time must be **immediately restored**, and his new release date must be calculated accordingly.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/7/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

FREDDIE JEFFERSON
850435
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Myron Lane Jones
INDIANA ATTORNEY GENERAL
benjamin.jones@atg.in.gov